UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PETTER INVESTMENTS, INC.

       Plaintiff,

v.                                                                                  Case No. 1:11-CV-207

HYDRO ENGINEERING, INC., and                             HON. GORDON J. QUIST
HYDRO ENGINEERING
EQUIPMENT & SUPPLY CO.

       Defendants.
_____/

## OPINION

### I. BACKGROUND

This case is the latest chapter in the parties' battle for sales over wash fluid containment systems. Plaintiff, Petter Investments, Inc. ("Petter"), and Defendants, Hydro Engineering, Inc. and Hydro Engineering Equipment & Supply Co. (collectively "Hydro"), are competitors in the design, manufacture, installation, and sale of wash fluid containment systems for pressure washing large vehicles such as automobiles, bulldozers, and semi-trucks. These systems incorporate a pad upon which the vehicle is placed for washing.

The dispute dates back to at least 1998, when Petter first accused Hydro of selling products that infringed its pending patent application, later issued as U.S. Patent No. 6,021,792 (the "'792 Patent"). A round of correspondence and investigation ensued, but the accusations subsided. All was quiet for several years, but in 2007, the dispute resurfaced when Hydro notified Petter that Petter's wash pads infringed Hydro's patents, U.S. Patent Nos. 6,779,591 and 7,258,749 (respectively, the "'591" and "'749" Patents). Things soon came to a head when Petter sued Hydro

in this Court in Case No. 1:07-CV-1033 (the "2007 Case"), in which Petter alleged that Hydro infringed the '792 Patent and sought a declaration that it was not infringing the '591 and '749 Patents. Hydro filed counterclaims for infringement of the '591 and '749 Patents.

The Court first addressed Petter's patent and granted Hydro summary judgment of noninfringement of the '792 Patent. Thereafter, the Court addressed Hydro's infringement claims and Petter's defenses. After construing the disputed claim terms of Hydro's patents, the Court granted Hydro summary judgment on all of Petter's invalidity defenses in an Opinion and Order entered on September 8, 2009. Subsequently, on October 6, 2009, the Court granted Hydro summary judgment, concluding that Petter's water channel side trough wash pads directly infringed claim 15 of the '591 Patent and that Petter contributorily infringed claims 2 and 3 of the '749 Patent through its sales of such wash pads. Shortly before trial, the parties settled Hydro's damage claims. The Settlement Agreement, which was referenced in the Settlement Order, called for a monetary payment by Petter and the entry of a permanent injunction. It also contained the following provision:

> 9. HYDRO'S PATENT VALIDITY
>
> 9.1 Neither Petter nor its attorneys shall take any action to aid, induce, assign, or participate in, directly or indirectly, any action contesting the validity or enforceability of any of the Hydro patents in suit (U.S. Patents Nos. 6,799,591 and 7,258,749) in any court or other tribunal including without limitation any litigation, declaratory judgment action, or requesting the United States Patent and Trademark Office ("PTO") for the reexamination or cancellation of any of Hydro's patents in suit.

(Settlement Agreement § 9.1.)

Peace was short-lived. On July 24, 2010, Hydro filed a motion for contempt and discovery, alleging that Petter had violated several provisions of the permanent injunction. Hydro also alleged that Petter was selling a "pervious" wash pad that infringed Hydro's patents. After a hearing,

2

Magistrate Judge Brenneman issued an order, without a finding of contempt, directing Petter to take certain actions, including providing Hydro discovery pertaining to the wash pads Petter was then building and had sold or installed since the permanent injunction was entered. In a separate filing in August 2010, Hydro requested entry of a stipulated consent judgment doubling the amount Petter was required to pay under the Settlement Agreement after Petter defaulted. This Court denied Hydro's request and subsequently awarded Petter attorneys' fees as the prevailing party on the consent judgment issue, in accordance with § 10.6 of the Settlement Agreement. Then, on January 31, 2011, Hydro filed a second motion for contempt alleging that Petter's redesigned "pervious" wash pads continue to infringe Hydro's patents and violate the permanent injunction. On July 18, 2011, following a contempt hearing, the Court issued an Opinion and Order denying Hydro's motion for contempt, including a finding that Petter's "pervious" wash pads do not infringe the '591 and '749 Patents. Subsequently, on September 29, 2011, the Court issued a Memorandum Order granting Hydro's motion for reconsideration and vacating that portion of its July 18, 2011, Opinion concluding that Petter's redesigned wash pads do not infringe the '591 and '749 Patents.

Petter filed the instant case on March 2, 2011, in response to Hydro's second motion for contempt, seeking declaratory judgments of noninfringement of the '591 and '749 Patents in Counts I and III, respectively, with regard to its "pervious" top wash pads having centrally-located troughs.[1] Petter also alleged claims for declarations of invalidity of the '591 and '749 Patents in Counts II and IV. Finally, in Counts V and VI Petter alleged claims for declarations of noninfringement and invalidity of another Hydro Patent, U.S. Patent 7,540,295 (the "'295" Patent). After serving Hydro,

---

[1] Petter alleged in its complaint that the motion for contempt was improper because its redesigned wash pads are materially different from the accused wash pads that were found to infringe in the 2007 Case. Petter thus asserted that infringement should be decided in a separate action.

Petter amended its complaint to add two additional claims, Counts VII and VIII, for declaratory judgments of noninfringement and invalidity of yet another Hydro patent, U.S. Patent 7,530,362 (the "'362" Patent).

Hydro has moved to dismiss Counts II and IV of the First Amended Complaint as barred by the parties' Settlement Agreement in the 2007 Case. Hydro also moves to dismiss Counts V-VIII of the First Amended Complaint for lack of an actual case or controversy.

For the reasons set forth below, the Court will grant Hydro's motion to dismiss Counts II and IV and will grant in part and deny in part Hydro's motions to dismiss Counts V-VIII of the First Amended Complaint.

## II. DISCUSSION

**A.     Motion To Dismiss Or Alternatively For Summary Judgment On Counts II And IV Of The First Amended Complaint**[2]

Hydro contends that Counts II and IV of the First Amended Complaint, which seek declarations of invalidity with regard to the '591 and '749 Patents, respectively, should be dismissed because they are barred by § 9.1 of the Settlement Agreement. As an initial matter, the Court must decide whether to treat Hydro's motion as a motion to dismiss under Rule 12(b)(6) or as a motion for summary judgment under Rule 56. In deciding a motion to dismiss, a court is limited to considering only the pleadings. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) (noting that "Rule 12(b)(6) scrutiny is limited to the pleadings"). Where matters outside the pleadings are presented in support of a motion and not excluded by the court, the court must treat the motion as a motion for summary judgment, giving all parties a reasonable opportunity to present

---

[2] Hydro initially moved to dismiss Counts II and IV and V and VI of the original Complaint. (Dkt. Nos. 14 and 17.) After Petter filed its First Amended Complaint, Hydro amended its initial motions to clarify that they remain directed at the same counts of the First Amended Complaint. (Dkt. Nos. 23 and 24.) Hydro also filed a motion to dismiss Counts VII and VIII, which were added in the First Amended Complaint.

all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d); *see also Himes v. United States*, 645 F.3d 771, 776 (6th Cir. 2011) ("A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action is treated as a motion for summary judgment when matters outside the pleadings are presented to the court."). In supporting and opposing the motion, both parties have relied upon matters outside the pleadings, including the Settlement Agreement. Therefore, the Court considers Hydro's motion under the Rule 56 summary judgment standard.

Hydro argues that Petter is contractually estopped from challenging the validity of the '591 and '749 Patents on the basis of Petter's agreement not to contest the invalidity or enforceability of those patents in § 9.1 of the Settlement Agreement, set forth above. In *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362 (Fed. Cir. 2001), the Federal Circuit held that a provision of a settlement agreement with language substantially similar to that in § 9.1 of the Settlement Agreement estopped the accused infringer from challenging the validity of the patent in suit in any subsequent action. The parties in *Flex-Foot* – Flex-Foot, the owner of the '363 patent, and Springlite, the alleged infringer – engaged in three rounds of litigation over the '363 patent. In the first case, Flex-Foot sued Springlite alleging that it infringed the '363 patent. The parties dismissed the case after they entered a settlement agreement that did not preclude future invalidity challenges by Springlite. In the second case, filed in 1993, Springlite sought a declaratory judgment of invalidity. Following discovery and the filing of a motion for summary judgment of invalidity, the parties settled the case and entered into a new settlement agreement and a corresponding license agreement. The settlement agreement contained the following language pertinent to subsequent invalidity challenges:

> 7.1  [Springlite] agrees not to challenge or cause to be challenged, directly or indirectly, the validity or enforceability of the '913 patent and/or the '363 patent in any court or other tribunal, including the United States Patent and Trademark

5

> Office.  As to the '363 and '913 patents only, [Springlite] waives any and all invalidity and unenforceability defenses in any future litigation, arbitration, or other proceeding.  This waiver applies to any product made, used, or sold by [Springlite] or any of their assignees, successors or those who act for or in concert with any of them at any time during the life of either the '363 or '913 patents.

*Id.* at 1364 (footnote omitted).  The license agreement contained a similar provision.  Subsequently, in 1997, Flex-Foot sued Springlite for infringement of the '363 patent and the case was submitted to arbitration in accordance with the most recent settlement agreement.  The arbitrators found that the device infringed and issued an award in favor of Flex-Foot.  Springlite moved to vacate the award, arguing that the district court should consider its invalidity argument.  The district court denied the motion on the ground that Springlite was collaterally estopped from challenging the validity of the '363 patent.  The Federal Circuit held that the district court was correct to conclude that Springlite was estopped, albeit on the basis of *contractual* estoppel arising from the dismissal with prejudice of the 1993 case and the related settlement agreement.  The court reasoned that such a result strikes an appropriate balance between the competing policies of permitting full and free competition in the use of ideas in the public domain and encouraging settlement of patent litigation. *Id.* at 1368-69.  Summarizing its holding, the court stated:

> Once an accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit, the accused infringer is contractually estopped from raising any such challenge in any subsequent proceeding.

*Id.* at 1370.

More recently, the Federal Circuit explained that *Flex-Foot*'s contractual estoppel doctrine does not require that invalidity issues were actually litigated in the proceeding giving rise to the settlement agreement.  *Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1363 (Fed. Cir. 2010).  The

6

court said that while the absence of ligation of invalidity issues may be pertinent to whether a party waived future challenges to invalidity, the critical requirement for contractual estoppel is "clear and unambiguous language barring the right to challenge patent validity in future infringement actions . . . even if invalidity claims had not been previously at issue and had not been actually litigated." *Id.*

In the instant case, the language of § 9.1 of the Settlement Agreement sets forth in clear and unambiguous terms Petter's agreement not to "contest[] the validity or enforceability of the Hydro patents in suit (U.S. Patents Nos. 6,799,591 and 7,258,749) in any court or other tribunal." This language is materially indistinguishable from the language at issue in *Flex-Foot*, which gave rise to contractual estoppel. Even more compelling in this case is that this Court, unlike the district court in *Flex-Foot*, actually considered and rejected Petter's invalidity defenses. Thus, those issues were actually and fully litigated. Accordingly, the Settlement Agreement provides an appropriate basis to contractually estop Petter from contesting the validity of the '591 and '749 Patents. *See Diversey Lever, Inc. v. Ecolab, Inc.*, 1891 F.3d 1350, 1352 (Fed. Cir. 1999) (holding that language in a settlement agreement stating that the defendant would not "'directly or indirectly aid, assist or participate in any action contesting the validity'" of the patents at issue established that the defendant "surrendered its right to challenge the validity of the patents in any context").

Petter contends that *Flex-Foot* is inapplicable because, unlike the agreement in *Flex-Foot*, the Settlement Agreement omits language specifying its application to any particular Petter product. Nowhere in *Flex-Foot*, however, does the court indicate that an agreement to forego invalidity challenges is dependent upon language specifying the particular products to which it applies. Rather, all that is required is a voluntary dismissal with prejudice pursuant to a settlement agreement containing "clear and unambiguous language barring the right to challenge patent validity."

7

*Baseload Energy, Inc.*, 619 F.3d at 1363. These are the circumstances in the instant case.[3]

Petter next argues that *Flex-Foot* does not apply where the validity of the settlement agreement is at issue. This argument is correct insofar as it goes, for an invalid settlement agreement would likely not provide a basis for estoppel. *See MacGregor v. Westinghouse Elect. & Mfg. Co.*, 329 U.S. 402, 407, 67 S. Ct. 421, 423 (1947) (holding that patent licensee was not estopped to contest the validity of the licensed patent where the license agreement contained an illegal price fixing agreement that rendered the entire agreement invalid). Petter, however, fails to identify any basis for this Court to hold that the Settlement Agreement is invalid. On the contrary, until this point, Petter has never even suggested that the Settlement Agreement is invalid and, in fact, it has sought and obtained benefits under that agreement, including an award of attorney fees in the 2007 Case pursuant to the Settlement Agreement after prevailing on Hydro's motion for entry of consent judgment. (2007 Case Dkt. Nos. 378 at 7 (Petter arguing that "this Court should require Hydro to pay Petter's costs and fees as agreed to in paragraph 10.6 of the [Settlement] Agreement") and 394 at 2 (the Court concluding that "by virtue of § 10.6 of the [Settlement] Agreement, as prevailing party, Petter is entitled to an award of its reasonable attorneys' fees and costs").) Having itself affirmed the validity of the Settlement Agreement, Petter has no basis to challenge it now. *See generally* 28 Am. Jur. 2d *Estoppel & Waiver* § 65 (2000) ("Generally, equitable estoppel is applied to transactions where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he or she accepted a benefit. Such estoppel . . . precludes one who

---

[3] In this regard, Petter's reliance on *Caught Fish Enterprises, LLC v. Action Manufacturing, LLC*, No. 10-cv-00656-REB, 2011 WL 839334 (D. Colo. Mar. 7, 2011), is unavailing. First, that decision is not binding on this Court. More importantly, the terms of the parties' settlement agreement were confidential, and the court was careful not to disclose the specific terms of that agreement. *See id.* at *2. Even so, it is apparent from the court's discussion that the settlement agreement contained only a "broad waiver of claims arising in the previous litigation" and not clear and unambiguous provision barring future invalidity challenges. *Id.* at *5.

accepts the benefits from repudiating the accompanying or resulting obligation.").

Petter further contends that Hydro's own breach of the Settlement Agreement precludes Hydro from raising the Settlement Agreement as a bar to Petter's invalidity claims. In spite of its lengthy analysis, however, Petter fails to cite a single provision of the Settlement Agreement that Hydro has breached. Instead, Petter cites a laundry list of actions that Hydro took post-Settlement Agreement under the guise of enforcement, which Petter describes as harassing and annoying. As wrong as Hydro's actions might seem to Petter, in realty they are no more than the diligent efforts of a patent holder to monitor potential infringement of its patents.[4] But regardless of how one characterizes Hydro's actions, there is no legal basis to conclude that they somehow breached the Settlement Agreement. Accordingly, Petter has failed to show that it is not contractually estopped to assert its invalidity claims.[5]

**B. Motions To Dismiss Counts V Through VIII**

*Jurisdiction*

Hydro moves pursuant to Rule 12(b)(1) to dismiss Counts V and VI of the First Amended Complaint, which seek declaratory judgments of noninfringement and invalidity, respectively, with regard to Hydro's '295 Patent, and Counts VII and VIII of the First Amended complaint, which seek declaratory judgments of noninfringement and invalidity, respectively, with regard to Hydro's '362 Patent. Neither the '295 Patent nor the '362 Patent was asserted in the 2007 Case, although both

---

[4] The Court's July 18, 2011, Opinion and Order in the 2007 Case denying Hydro's second motion for contempt should not be considered an indication by the Court that Hydro's motion was groundless or brought in bad faith. While the Court initially concluded that Petter's redesigned wash pads do not infringe, it subsequently granted Hydro's motion for reconsideration, vacating that portion of the July 18, 2011, Opinion finding noninfringement. On further consideration, the Court concluded that the issue was not so clear cut.

[5] Because the Court relies on the doctrine of contractual estoppel set forth in *Flex-Foot*, it need not address Hydro's argument that Petter's invalidity challenges are bared by claim and issue preclusion.

were issued prior to the time the parties entered into the Settlement Agreement. The '295 Patent is a continuation of the '591 and '749 Patents and the '362 Patent is a continuation-in-part of the '591 Patent. Hydro contends that it has never asserted or threatened to assert that Petter has infringed or will infringe the '295 and '362 Patents and, therefore, no case or controversy exists for these two patents for purposes of Article III and the Declaratory Judgment Act. Hydro further contends that because Petter agreed in the Settlement Agreement to refrain from indirectly challenging the '591 and '749 Patents, it has impliedly covenanted not to attack the validity of the '295 and '362 Patents, which depend from the '591 and '749 Patents.

A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction.[6] Fed. R. Civ. P. 12(b)(1). The party opposing a Rule 12(b)(1) motion "bears the burden of proving jurisdiction." *EEOC v. Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 776 (6th Cir. 2010). A challenge to Article III's case or controversy requirement goes to the court's jurisdiction over the case. *In re Carter*, 553 F.3d 979, 984 (6th Cir. 2009). This Court must apply the law of the Federal Circuit in determining whether an actual case or controversy exists to support an action for a declaratory judgment of noninfringement and/or invalidity of a patent. *Adenta GmbH v. OrthoArm, Inc.*, 501 F. 3d 1364, 1368 (Fed. Cir. 2007).

The Declaratory Judgment Act provides, in part, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may

---

[6] Rule 12(b)(1) motions may be brought either as a facial attack or a factual attack. *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009) (quoting *Gentek Bldg. Prods. v. Sherwin-Williams Claims*, 491 F.3d 320, 330 (6th Cir. 2007)). A facial attack questions the sufficiency of the allegations in the pleading. *Id.* at 375-76. In a factual attack, "the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). When reviewing a facial attack, a court takes the allegations in the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.3d 320, 325 (6th Cir. 1990). In a factual attack, however, there is no presumption that the factual allegations of the complaint are true. *Id.* Because Hydro relies on matters outside of the pleadings, the Court deems Hydro's motion to be a factual attack.

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "actual controversy" requirement under the Declaratory Judgment Act is coextensive with Article III's case or controversy requirement. *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S 227, 239-41, 57 S. Ct. 461, 463-64 (1937)). "The requirement of an actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory rulings." *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993); *see also Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008) (noting that concepts of standing, ripeness, and mootness bear on whether a case is justiciable under Article III).

The existence of a case or controversy is highly dependent upon the particular facts at issue. The difference between an actual controversy and an abstract question in a given case "is necessarily one of degree," and must be ascertained by examining the totality of the circumstances to determine whether there is a "substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Swickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 959-60 (1969) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941)). In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764 (2007), the Supreme Court reiterated that the proper inquiry "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127, 127 S. Ct. at 771 (quoting *Md. Cas. Co.*). The Court rejected the Federal Circuit's prior, more strict, "reasonable apprehension of imminent suit" test for declaratory judgment standing as inconsistent with the Court's prior decisions. *Id.* at 132 n.11, 127

11

S. Ct. at 774 n.11. The reasonable apprehension test required "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Novartis*, 482 F.3d at 1339. Post-*MedImmune*, the Federal Circuit has applied the "under all the circumstances" standard, while recognizing that a reasonable apprehension of suit is "only one of many ways a patentee can satisfy the . . . all-the-circumstances test." *Caraco Pharm. Labs.*, 527 F.3d at 1291. Moreover, the Federal Circuit has held that *MedImmune* did not disturb many of its previous patent-related case or controversy principles, including that "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). The existence of an adverse patent or a subjective fear, therefore, are insufficient to invoke declaratory judgment jurisdiction. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008). Rather, a justiciable controversy requires some affirmative act by the patentee, such as "creating a reasonable apprehension of an infringement suit," "demanding the right to royalty payments," "or creating a barrier to the regulatory approval of a product that is necessary for marketing." *Id.*

Hydro contends that Petter cannot show a real and immediate injury or threat of future injury by Hydro with regard to the '295 and '362 Patents because Hydro has never asserted, nor threatened to assert, those patents against Petter. Hydro further alleges that it even offered Petter a covenant not to sue in connection with the '295 Patent. Petter does not dispute Hydro's assertion that it has taken no affirmative act to assert either patent against Petter, although it denies Hydro's claim that Hydro has offered (and Petter has rejected) a covenant not to sue on the '295 Patent. (Dkt. No. 56

at 5.) Having thoroughly searched the record, the Court finds no evidence supporting Hydro's claim that it has offered a covenant not to sue on the '295 Patent, and thus finds that Hydro has not offered one to Petter.

Petter argues that given the parties' history of adverse dealings, including extensive litigation, the circumstances support a justiciable claim for declaratory relief. Petter further points out that some courts have held that the relatedness of two patents is at least a factor in a declaratory judgment jurisdiction analysis. *See, e.g., Icos Vision Sys. Corp. v. Scanner Techs. Corp.*, 699 F. Supp. 2d 664 (S.D.N.Y. 2010); *Tesco Corp. v. Weatherford Int'l, Inc.*, No. H-08-2531, 2009 WL 497134 (S.D. Tex. Feb. 26, 2009); *Dow Jones & Co. v. Ablaise Ltd.*, 583 F. Supp. 2d 41 (D.D.C. 2008). The circumstances in *Tesco Corp.* are the most analogous to those in this case. The plaintiff in *Tesco* sued the defendants for infringement of its '443 patent. In response, a defendant asserted counterclaims for declaratory judgments of noninfringement and invalidity of the plaintiff's '324 patent, which was related to the '443 patent. The plaintiff moved for dismissal of the counterclaim, arguing that the plaintiff was not asserting the '324 patent in the litigation, had never asserted it against the defendant, and would not assert it against the defendant. *Id.* at *2. The defendant responded that the '324 patent was a continuation of the '443 patent, had the same specification and drawings, claimed the benefit of the '443 patent's filing date, and many of the claims of the '324 patent were identical to the claims of the '443 patent. The court noted that post-*MedImmune*, a covenant not to sue may or may not divest a court of jurisdiction over a declaratory judgment claim, depending on the circumstances. For example, it observed, the Federal Circuit has found divestiture where the patent holder gave a covenant not to sue and there was no evidence that the potential infringer had ever made or sold products that infringed the patent. *Id.* at *4 (citing *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007)). On the other hand, the court

noted, the Federal Circuit has found jurisdiction if the patentee has taken steps suggesting that it is contemplating an infringement action, in spite of assurances to the contrary to the other party. *Id.* (citing *SanDisk Corp.*, *supra*). Citing *Dow Jones*, *supra*, the *Tesco* court concluded that it had jurisdiction, even though the plaintiff had offered a covenant not to sue the defendant on the '324 patent, because '443 patent and the '324 patent were closely related. In *Dow Jones*, following a year of discovery on two related patents, the plaintiff offered the defendant a covenant not to sue on one of the patents. The court concluded that it should retain jurisdiction over the defendant's counterclaims for a declaration of invalidity as to both patents, however, because "[t]he relationship *between the two patents* in these related cases is so close that the validity or invalidity of one may be said to form 'part of same case or controversy' as the other." *Dow Jones*, 583 F. Supp. 2d at 44. Applying this reasoning to the case before it, the *Tesco* court concluded,

> while Plaintiff sued under the '433 Patent and discovery is in its infancy, the similarity of the two patents compels the result that the court should retain jurisdiction over the declaratory judgment action for the '324 Patent. Because of the similar facts in the *Dow Jones* case and the liberalization of the declaratory judgment standard under *MedImmune*, Plaintiff's Motion will be denied.

*Tesco*, 2009 WL 497134, at *5.

The Court finds the reasoning in *Dow Jones* and *Tesco* persuasive, and in the instant case, the relatedness between the '295 and '362 Patents and the '591 and '749 Patents is such that they may be considered as part of the same case or controversy. Hydro has asserted both the '591 and '749 Patents against Petter, and Hydro does not dispute that those patents are closely related to the '295 and '362 Patents. Moreover, as the Court has found, Hydro has not offered Petter a covenant not to sue as to either patent. Contrary to Hydro's argument, the Court does not deem Hydro's lack of assertion of the '295 and '362 Patents during the parties' litigation history and the Settlement Agreement, which omits mention of those patents, as sufficient grounds to distinguish the instant

case from *Tesco*. Based on all of the circumstances, the Court finds a sufficient basis to exercise jurisdiction over Petter's declaratory judgment claims.

### *Legal Estoppel*

Notwithstanding its conclusion that it has jurisdiction over Counts V-VIII, the Court concludes that Hydro is entitled to dismissal of Counts VI and VIII, which seek declarations of invalidity as to the '295 and '362 Patents, respectively. The Court concludes that the doctrine of legal estoppel precludes Petter from seeking to do what the Settlement Agreement says it cannot do by using the '295 and '362 Patents to backdoor a validity challenge to the '591 and '749 Patents. The Federal Circuit has described this doctrine as follows:

> The essence of legal estoppel that can be found in the estoppel of the implied license doctrine involves the fact that the licensor . . . has licensed . . . a definable property right for valuable consideration, and then has attempted to derogate or detract from that right. The grantor is estopped from taking back in any extent that for which he has already received.

*Gen. Protecht Group, Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1360 (Fed. Cir. 2011) (quoting *TransCore, LP v. Electronic Consultants Corp.*, 563 F.3d 1271, 79 (Fed. Cir. 2009)). In *General Protecht*, the defendant, Leviton, had sued the plaintiff, GPG, in a previous action alleging infringement. The parties entered into a settlement agreement that contained a forum selection clause specifying the District of New Mexico as the exclusive venue for disputes arising out of the settlement agreement. The settlement agreement also provided that Leviton would not sue GPG for infringement of the patents in suit based on certain products currently accused of infringement and an anticipated future new product. Thereafter, Leviton filed a complaint with the International Trade Commission alleging that GPG infringed two patents that were continuations of the patents at issue in the settlement agreement. Leviton also filed a complaint alleging infringement of the same two continuation patents in the Northern District of California. In response, GPG filed suit in the District

15

of New Mexico alleging declaratory judgment claims for breach of contract, noninfringement, and invalidity of the continuation patents and requested a preliminary injunction against the litigation outside of New Mexico. The New Mexico district court granted the preliminary injunction, finding a likelihood of success on the merits because GPG asserted a defense of implied license (of the continuation patents) arising from the settlement agreement, that would trigger the forum selection clause. The Federal Circuit affirmed the district court's finding that GPG demonstrated a likelihood of establishing an implied license, noting that "the newly asserted continuations are based on the same disclosure as the previously licensed patents and [], by definition, the continuations can claim no new invention not already supported in the earlier issued patents." *Id.* at 1361. The Court further stated that circuit precedent

> prohibits a patent licensor from derogating from rights granted under the license by "taking back in any extent that for which [it] has already received consideration." In this case, Leviton's actions have unquestionably derogated from GPG's rights under the Settlement Agreement. The same products were accused. The same inventive subject matter was disclosed in the licensed patents. If Leviton did not intend its license of these products to extend to claims presented in continuation patents, it had an obligation to make that clear.

*Id.*

Although the implied license rule is not implicated in this case, the same principles come into play. That is, Petter agreed in the Settlement Agreement to refrain from challenging the validity or enforceability of the '591 and '792 Patents. While the Settlement Agreement does not expressly cover the '295 and '362 Patents, it does preclude Petter from "indirectly" contesting the validity of the '591 and '792 Patents – the result Petter will obtain if it is permitted to maintain its invalidity claims in Counts VI and VIII. In essence, Petter seeks to derogate from its covenant by attacking the validity of Hydro's patents indirectly. Petter has demonstrated this much through the subpoenas it sought to serve on third parties in this case concerning invalidity issues that were, or could have

been, raised in the 2007 Case. Accordingly, the claims for declaratory judgments of invalidity alleged in Counts VI and VIII will be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Hydro's amended motion to dismiss or for summary judgment on Counts II and IV. In addition, the Court will grant in part and deny in part Hydro's amended motion to dismiss Counts V and VI and Hydro's motion to dismiss Counts VII and VIII. These motions will be granted with regard to Counts VI and VIII and denied with regard to Counts V and VII.

An Order consistent with this Opinion will be entered.


Dated: November 2, 2011                    /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                     UNITED STATES DISTRICT JUDGE